

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| CASSANDRA MOORE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | 07 C 481 |
| v. ) | |
| ) | Hon. Charles R. Norgle |
| AUSTIN BANK OF CHICAGO and ) | |
| THOMAS MALONE, ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

CHARLES R. NORGLE, District Judge

Before the court is Plaintiff Cassandra Moore's motion for partial summary

judgment and Defendant Austin Bank of Chicago's motion for summary judgment, both

brought pursuant to Federal Rule of Civil Procedure 56. For the following reasons, both

motions are denied.

## I. BACKGROUND

### A. Facts

Plaintiff Cassandra Moore ("Moore") began her employment with Defendant

Austin Bank of Chicago ("Austin Bank") in June 2005. Since June 2005, Moore has

worked as a teller at Austin Bank's Ashland branch. From February 2005 until

December 2007, Anita Tabor was employed by Austin Bank in the position of "teller

supervisor" at the Ashland branch. Defendant Thomas Malone ("Malone") was

employed by Austin Bank as assistant branch manager at the Ashland branch from

November 2005 until July 27, 2006.

Moore's primary contention is that Malone sexually harassed her, Moore complained about the harassment to her supervisor Tabor on multiple occasions and yet Austin Bank failed to respond to Moore's complaints for almost four months. Austin Bank, of course, disagrees. In support of their arguments, Moore and Austin Bank have presented two contrasting accounts of the underlying events.

### 1. *Moore's Account of Events*

According to Moore, [1] following Malone's hiring in November 2005, Malone continuously sexually harassed Moore. Among other actions, Moore alleges that Malone repeatedly touched her breasts, ground his genitals against her buttocks, placed Moore's hand on his erect penis and touched Moore's buttocks with his hand. Moore points to Malone's job description as proof that his assistant bank manager position was part of Austin Bank's management and that Malone had supervisory authority over Moore. The assistant bank manager job description states in its entirety: "Responsible for supervision of up to 10 employees engaged in Teller and Personal Banker activities. Hire, terminate employment, assign, review and organize work, train, establish performance standards, enforce bank policies and evaluate performance and discipline." See Pl.'s Ex. 5.

Moore asserts that she first had a conversation with teller supervisor Anita Tabor about Malone's behavior sometime prior to March 24, 2006. Tabor remembers Moore telling her that Malone "played too much." Tabor dep. at 159. Tabor did not take any action in response to the conversation.

On or around March 24, 2006, Moore again complained to Tabor, telling Tabor that Malone was touching her breasts and staring at her. Tabor found Malone's actions

---

[1]  Unless otherwise attributed, for Moore's account of events the Court takes the following facts from Moore's LR 56.1(a)(3) and 56.1(b)(3)(c) Statements.

inappropriate and considered calling human resources, but ultimately chose not to report the complaint or speak to Malone about Moore's allegation. Tabor admitted that she did not feel properly trained on how to handle a complaint like Moore's, although she acknowledges that a teller who was being sexually harassed would be following the correct procedure under Austin Bank's sexual harassment policy (the "Policy") if she reported the harassment to Tabor. Lloyd Shapiro, Austin Bank's vice-president of human resources, concurs that under the Policy, employees who feel they are being sexually harassed can report that harassment to their supervisor. Austin Bank's Policy states in relevant part as follows:

> Any employee who believes that a supervisor's, another employee's, or a nonemployee's actions or words constitute unwelcome harassment has a responsibility to report or complain about the situation as soon as possible. Such report should be made to the employee's supervisor or to the department head or Human Resources if the complaint involves the supervisor.

Austin Bank's LR 56.1(a)(3) Statement of Uncontested Facts, ¶12.

Sometime in May or June of 2006 and again in late June or early July, Moore had additional conversations with Tabor about Malone's harassment, but Tabor still took no action. Notwithstanding Moore's complaints to Tabor, Malone's harassment of Moore continued, including one incident in June 2006 when Malone traced his finger around Moore's nipple.

On July 15, 2006, Moore told Tabor that Malone had put Moore's hand on his erection. Following that conversation, on July 17, 2006, Tabor finally told branch manager Christine Sharkey about Malone's conduct and Austin Bank initiated an investigation of Malone that culminated in his firing on July 27, 2006. Austin Bank's LR 56.1(b)(3)(C) Statement of Additional Uncontested Facts, ¶¶23-4, 29.

3

## 2. *Austin Bank's Account of Events*

Austin Bank disputes Moore's version of relevant events, particularly with respect to Moore's conversations with Tabor about Malone's behavior.[2] According to Austin Bank, during its investigation of Moore's allegations regarding Malone, Tabor repeatedly told Lloyd Shapiro that Moore had never complained to her about sexual harassment prior to July 15, 2006. Tabor also signed two of Shapiro's investigatory memos that summarized his interviews with Tabor. See Austin Bank's LR 56.1(b)(3)(C) Statement of Additional Uncontested Facts, Ex. A, Ex. B. Those memos contained Tabor's statements describing Moore's failure to alert Tabor to Malone's harassment until July 15, 2006. Austin Bank also notes that, according to Malone, Malone never intentionally touched Moore. See generally Malone dep. With respect to Malone's work responsibilities, Austin Bank relies on the deposition of Malone and affidavit of Shapiro to support its claim that Malone did not have the ability to hire, fire or discipline employees.

Therefore, under Austin Bank's account, Moore did not inform Austin Bank about Malone's harassment until over seven months after the harassment began. Once Moore did complain to Tabor about her co-employee, Austin Bank immediately responded to Moore's allegations by commencing an investigation that resulted in Malone's firing less than two weeks later.

## B. Procedural History

Moore filed a formal sexual harassment charge with the EEOC on July 25, 2006. See Pl.'s Compl. ¶4. The EEOC issued Moore a Right to Sue letter on January 24, 2007.

---

[2] Unless otherwise attributed, for Austin Bank's account of events the court takes the following facts from Austin Bank's LR 56.1(a)(3) and 56.1(b)(3)(c) Statements.

See Notice of Rights. On January 25, 2007, Moore filed suit under Title VII against Austin Bank and Malone. The complaint alleged that Austin Bank subjected her to a sexually hostile work environment that included "debilitating sexual harassment" and "offensive touching" by Malone. Pl.'s Complaint ¶16. Moore also brought assault and battery claims against Austin Bank and Malone under Illinois law. Id. at ¶¶60-9. In response, Austin Bank filed a motion for summary judgment, claiming that it exercised reasonable care to prevent and correct any harassing conduct that occurred in the bank's workplace and that Moore unreasonably failed to take advantage of opportunities provided by defendants to prevent or correct harassment. See Austin Bank's Mot. for Summ. J. Moore then filed a motion for partial summary judgment seeking to preclude Austin Bank from relying on the above-described defense. See Pl.'s Mot. for Partial Summ. J. Both motions are now fully briefed and before the court.

## II. DISCUSSION

### A. Standard of Decision

Summary judgment is permissible when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The nonmoving party cannot rest on the pleadings alone, but must identify specific facts, see Heft v. Moore, 351 F.3d 278, 283 (7th Cir. 2003), that raise more than a mere scintilla of evidence to show a genuine triable issue of material fact. See Vukadinovich v. Bd. of Sch. Tr.'s of North Newton School, 278 F.3d 693, 699 (7th Cir. 2002).

In deciding a motion for summary judgment, the court can only consider evidence that would be admissible at trial under the Federal Rules of Evidence. See Stinnett v.

Iron Works Gym/Executive Health Spa, Inc., 301 F.3d 610, 613 (7th Cir. 2002). The court views the record and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. See FED. R. CIV. P. 56(c); see also Koszola v. Bd. of Educ. of City of Chicago, 385 F.3d 1104, 1108 (7th Cir. 2004). "In the light most favorable" simply means that summary judgment is not appropriate if the court must make "a choice of inferences." See United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); see also First Nat'l Bank of Ariz. v. Cities Service Co., 391 U.S. 253, 280 (1968); Spiegla v. Hall, 371 F.3d 928, 935 (7th Cir. 2004). The choice between reasonable inferences from facts is a jury function. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

The inferences construed in the nonmoving party's favor, however, must be drawn from specific facts identified in the record that support that party's position. See Szymanski v. Rite-Way Lawn Maintenance Co., 231 F.3d 360, 364 (7th Cir. 2000). Under this standard, "[c]onclusory allegations alone cannot defeat a motion for summary judgment." Thomas v. Christ Hospital and Medical Center, 328 F.3d 890, 892-93 (7th Cir. 2003) (citing Lujan v. Nat'l Wildlife Federation, 497 U.S. 871, 888-89 (1990)).

**B.    Moore's Title VII Claim**

### 1. *Hostile Environment Sexual Harassment*

Under Title VII, an employer may not "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e-2(a)(1). Courts interpret this statute to prohibit employers from forcing employees to "work in a discriminatory hostile or abusive environment." Shanoff v. Ill. Dept. of

6

Human Serv., 258 F.3d 696, 701 (7th Cir. 2001) (quoting Harris v. Forklift Sys., Inc., 510

U.S. 17, 21 (1993)).

> To establish a prima facie case of hostile environment sexual harassment:
>
> [A] plaintiff must show that: (1) she was subjected to unwelcome sexual
> harassment in the form of sexual advances, requests for sexual favors or other
> verbal or physical conduct of a sexual nature; (2) the harassment was based on
> sex; (3) the sexual harassment had the effect of unreasonably interfering with the
> plaintiff's work performance in creating an intimidating, hostile or offensive
> working environment that affected seriously the psychological well-being of the
> plaintiff; and (4) there is a basis for employer liability.

Parkins v. Civil Constructors of Ill., Inc., 163 F.3d 1027, 1032 (7th Cir. 1998) (citing

Rennie v. Dalton, 3 F.3d 1100, 1107 (7th Cir. 1993)); see also Kriescher v. Fox Hills

Golf Resort and Conf. Ctr. FHR, Inc., 384 F.3d 912, 915 (7th Cir. 2004) (to survive

summary judgment plaintiff must show that she was subjected to unwelcome harassment

on the basis of her sex, the harassment was so severe or pervasive as to alter the

conditions of her work environment, and there is some basis for employer liability).

Austin Bank does not contest that Moore has established questions of material

fact as to the first three elements of her hostile environment sexual harassment claim.

Indeed, Moore's allegations regarding Malone's harassment are certainly sufficient to

create a question of fact regarding whether the harassment was so severe as to alter the

conditions of her work environment. See Worth v. Tyer, 276 F.3d 249, 268 (7th Cir.

2001) (affirming trial court's conclusion that plaintiff's work environment was hostile

where her supervisor touched her breast near the nipple for several seconds); see also

Quantock v. Shared Marketing Services, Inc., 312 F.3d 899, 904 (7th Cir. 2002) (holding

that a reasonable jury could find that a supervisor's "infrequent" solicitation of sex acts

from plaintiff were sufficiently severe to alter the terms of plaintiff's employment).

### a. *Sexual Harassment Employer Liability*

Austin Bank instead focuses on the fourth prong of Moore's prima facie case,

arguing that Moore has not sufficiently established a basis for employer liability. "The

standard for employer liability turns on whether the alleged harasser was the plaintiff's

supervisor, instead of a mere co-worker." Rhodes v. Ill. Dept. of Trans., 359 F.3d 498,

505 (7th Cir. 2004). Harassment by a supervisor of the plaintiff "triggers strict liability,

subject to the possibility of an affirmative defense in the event the plaintiff suffered no

tangible employment action." Id. (citing Parkins, 163 F.3d at 1032). In contrast, "an

employer may be found liable for a hostile work environment created by an employee

who was not the plaintiff's supervisor only where the plaintiff proves that the employer

has 'been negligent either in discovering or remedying the harassment.'" Id. at 505-06

(quoting Parkins, 163 F.3d at 1032). In order to establish an employer's negligence, "[a]

plaintiff alleging co-worker harassment must offer evidence either that she notified the

employer about the harassment or that the harassment was so pervasive that a jury may

infer that the employer knew about it." Bombaci v. Journal Community Pub. Group, 482

F.3d 979, 983-84 (7th Cir. 2007); see also Dunn v. Washington County Hospital, 429

F.3d 689, 691 (7th Cir. 2005) ("When a supervisor causes the objectionable conduct,

proof of reasonable care is an affirmative defense; otherwise the plaintiff bears the

burden of showing that the employer knew of the problem (usually though not always

this requires the employee to show that a complaint was made) and that the employer did

not act reasonably to equalize working conditions once it had knowledge.").

As an initial matter, the Court notes that a question of material fact does exist

regarding whether Malone was a "supervisor" under Title VII during his employment at

Austin Bank. For Title VII purposes, a supervisor is defined as one who has the power to "hire, fire, demote, promote, transfer or discipline" the victimized employee. Parkins, 163 F.3d at 1034. See also Rhodes, 359 F.3d at 506 ("A supervisor is someone with the power to *directly* affect the terms and conditions of the plaintiff's employment.").

Moore and Austin Bank dispute whether Malone possessed the authority to hire, fire and discipline tellers. As Moore notes, Malone's job description does state that he was "[r]esponsible for [the] supervision of up to 10 employees engaged in Teller and personal Banker activities . . . ." and had the ability to, "[h]ire, terminate employment, assign, review and organize work, train, establish performance standards, enforce bank policies and evaluate performance and discipline." See Pl.'s Ex. 5. In addition, Austin Bank admits that Malone had the authority to recommend the termination of Moore's employment, the authority to hire employees during Moore's employment, and the authority to schedule breaks for his subordinates during Moore's employment. See Austin Bank's Resp. to Requests to Admit at 4. However, Austin Bank claims, based on the deposition of Malone and the affidavit of Shapiro, that Malone did not have the power to hire and fire employees, that plaintiff never knew Malone to hire, fire or discipline employees, and that only branch manager Christine Sharkey could discipline employees. See Austin Bank's LR 56.1(a)(3) Statement of Uncontested Facts, ¶¶19-22. Faced with this conflicting evidence, the Court cannot hold as a matter of law that Malone was a supervisor under Title VII. See Hall v. Bodine Elec. Co., 276 F.3d 345, 355 (7th Cir. 2002) ("[T]he fact that an employer authorizes one employee to oversee aspects of another employee's job performance does not establish a Title VII supervisory relationship."); see also Rhodes, 359 F.3d at 506 (holding that plaintiff's harassers were

not supervisors under Title VII where the harassers managed plaintiff's work assignments, investigated complaints and disputes, and made recommendations concerning sanctions for rule violations, but did not have the power to hire, fire, promote, demote or transfer plaintiff); Johnson v. West, 218 F.3d 725, 730 (7th Cir. 2000) (holding that a chief of police was not a supervisor under Title VII, even though he signed off on plaintiff's performance appraisals, because he had two supervisors). But see Phelan v. Cook County, 463 F.3d 773, 783-84 (7th Cir. 2006) (holding that there was a question of fact whether an employee was a supervisor under Title VII even though the employee did not have the final say as to plaintiff's termination).

Even assuming *arguendo* that Malone was not a supervisor for Title VII purposes, a question of fact still exists concerning whether Austin Bank was negligent in protecting Moore from Malone's harassment and, more specifically, whether Moore notified Austin Bank of Malone's harassment and, if so, whether Austin Bank reasonably responded to Moore's complaint.

### b. *Employer Notice*

Interpreting the facts in a light most favorable to Moore, she, in accordance with Austin Bank's Policy, told her supervisor on at least three occasions about Malone's behavior, including allegations of physical touching, before Austin Bank took corrective action. Moore's repeated complaints to Tabor, who was an authorized channel for such complaints under Austin Bank's harassment policy, see Tabor dep. at 31-2; see also Shapiro dep. at 47, create a question of fact regarding Austin Bank's notice of the alleged harassment. See Young v. Bayer Corp., 123 F.3d 672, 675 (7th Cir. 1997) (holding that a corporation was on notice as to plaintiff's harassment complaint because plaintiff

10

reported the complaint to her department head in accordance with the corporation's internal harassment policies); see also Mingo v. Roadway Express, Inc., 135 F.Supp.2d 884, 895-97 (N.D. Ill. 2001) (holding that a question of fact existed regarding an employer's notice of harassment where the employee claimed she reported the harassment to her supervisor, even though the supervisor was not a proper "avenue" for complaints under the employer's written policy).

### c. *Employer Response*

There is also a question of fact regarding the reasonability of Austin Bank's response to Moore's complaint. "An employer's response to allegations of harassment 'must be reasonably calculated to prevent further harassment under the particular facts and circumstances of the case at the time the allegations are made.'" Longstreet v. Ill. Dept. of Corrections, 276 F.3d 379, 382 (7th Cir. 2002) (quoting Brooms v. Regal Tube Co., 881 F.3d 412, 421 (7th Cir. 1989)). Here the primary dispute between Moore and Austin Bank is whether Moore discussed Malone's behavior with Tabor prior to July 15, 2006. According to Tabor's deposition testimony, Moore first complained to Tabor about Malone's sexual harassment in March 2006, and yet Tabor took *no* action regarding Moore's complaints until July 17, 2006. A complete failure to respond to Moore's complaints for almost four months simply cannot be interpreted as being "reasonably calculated to prevent further harassment." Id. That is especially true where Moore's complaints alleged physical harassment on the part of Malone. See id. ("An employer must take more care to protect employees, depending on the seriousness of the harassment."); see also id. at 381 (describing plaintiff's allegation that her co-employee rubbed his penis across her buttocks as a nine out of ten on a scale of seriousness).

11

## 2. Corrective Opportunities/Reasonable Response Defense

With respect to Moore's motion for partial summary judgment, however, this time interpreting the facts in the light most favorable to Austin Bank, Moore failed to inform Tabor, or any other supervisor at Austin Bank, of Malone's alleged harassment until at least seven months after the harassment began. Thus the dispute between the parties as to whether Moore first complained to Tabor in March or July of 2006 creates a question of fact as to whether Moore failed to take advantage of the preventative and corrective opportunities provided by Austin Bank. See Gawley v. Indiana Univ., 276 F.3d 301, 312 (7th Cir. 2001) (holding that plaintiff unreasonably failed to take advantage of her employer's preventative or corrective opportunities where plaintiff waited seven months after harassment started before she availed herself of her employer's formal complaint procedures).

In addition, according to Austin Bank, once Moore did complain to Tabor, Austin Bank promptly began an investigation that quickly resulted in Malone's firing. Austin Bank's claim that it immediately investigated Moore's complaint, see Austin Bank's LR 56.1(a)(3) Statement of Uncontested Facts, ¶¶32-8, is sufficient to create a question of material fact as to the reasonability of Austin Bank's corrective action. See Parkins, 163 F.3d at 1036 (affirming the trial court's finding of no liability for an employer in a Title VII case because the employer immediately began an investigation of plaintiff's sexual harassment complaint and promptly punished the harassers); see also Lapka v. Chertoff, 517 F.3d 974, 984 (7th Cir. 2008) ([T]he 'hallmark of a reasonable corrective action' is a prompt investigation.") (quoting Cerros v. Steel Technologies, Inc., 398 F.3d 944, 953-54 (7th Cir. 2005)). Thus, Austin Bank has established questions of material fact as to both

the reasonability of Moore's use of Austin Bank's preventative or corrective

opportunities and to the reasonability of Austin Bank's corrective action.

## CONCLUSION

For the foregoing reasons, Moore's motion for partial summary judgment and

Austin Bank's motion for summary judgment are both denied.

IT IS SO ORDERED.

ENTER:

CHARLES RONALD NORGLE, Judge
United States District Court

DATED: February 10, 2009